IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                          Case No. 94-10129-JWB

PHOUC H. NGUYEN,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). (Doc. 300.) The motion has been fully briefed and is ripe for decision. (Docs. 300, 302, 303.) For the reasons stated herein, the motion for sentence reduction is DENIED.

**I.   Background**

On January 4, 1996, Defendant was charged in a superseding indictment with two counts. (Doc. 78.) Count One charged a Hobbs Act robbery, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2, based on a November 8, 1994 robbery of the Mandarin Chinese Restaurant and Lounge in Wichita, Kansas. Count Two charged the unlawful carrying and use of a firearm during and in relation to the robbery and causing the death of a person through the use of the firearm, which killing was a murder, in violation of 18 U.S.C. § 924(j)(1)[1] and 18 U.S.C. § 2, "in that the defendant, with malice aforethought, did unlawfully kill Barbara Sun by shooting her with a firearm in the perpetration of the robbery…" (*Id.* at 2.)

---

[1] At the time of indictment and trial, this provision was designated as § 924(i)(1). (It was one of two different subsections that were inadvertently given the same number.) It has since been redesignated as § 924(j)(1) and is referred to here by its current designation.

1

The charges against Defendant were tried to a jury. On November 7, 1996, the jury returned a verdict of guilty on both counts. (Doc. 191.) On April 15, 1997, the court sentenced Defendant to 240 months imprisonment on Count One and to life imprisonment without the possibility of release on Count Two, with the counts to run concurrently.[2] (Doc. 227.) The judgment was affirmed on direct appeal. (Doc. 248.)

On July 19, 2021, Defendant filed the instant motion for reduction of sentence from life to 35 years. (Doc. 300 at 25.) Defendant argues that his age, length of sentence, rehabilitation, and family circumstances warrant a sentence reduction under § 3582(c)(1)(A)(i). (*Id*. at 7.) Additionally, Defendant argues that "the COVID-19 pandemic, combined with his 'high risk' medical conditions [sic] of tuberculosis, create an extraordinary and compelling reason to grant his motion." (*Id*. at 20.) In response, the government asserts that Defendant has failed to show extraordinary and compelling reasons for a reduction. Moreover, it argues the factors in § 3553(a) weigh heavily against a reduction. (Doc. 302 at 14.) Finally, the government argues Defendant failed to exhaust his administrative remedies "based upon his age, length of sentence, rehabilitation, or family circumstances." (*Id*. at 9.)

II.  **Legal Standards**

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but [that] rule of finality is subject to a few narrow exceptions." *United States v. McGee*, 992 F.3d 1035, 1041 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)). One exception is found in the "compassionate release" provision of 18 U.S.C. § 3582(c)(1)(A). Prior to 2018, that section only authorized the Director of the Bureau of Prisons to move for a sentence reduction. *McGee*, 992 F.3d at 1041. The First Step Act changed this to allow

---

[2] The sentence was consistent with the guideline range for imprisonment, which was based on a total offense level of 43 and a criminal history category of III. Presentence Report (PSR) ¶ 49, 56.

2

a defendant to file his own motion for reduction after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *United States v. Mata-Soto*, No. 20-3223, 2021 WL 3520599, at *1 (10th Cir. Aug. 11, 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Tenth Circuit recently endorsed a three-step test for deciding motions under § 3582(c)(1)(A). *Id*. at 1042 (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). If a defendant has administratively exhausted his claim, the court may reduce a sentence if three requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id*. A court may deny the motion when any requirement is lacking, and the court need not address the other requirements. *Id*. at 1043. But all the requirements must be addressed when the court grants a motion for release under the statute. *Id*.

The Tenth Circuit has held that the court has independent discretion to determine whether a defendant has shown "extraordinary and compelling reasons" that warrant a reduction. *See McGee*, 992 F.3d at 1044, 1048. "[E]xtraordinary" means "exceptional to a very marked extent." *United States v. Ford*, No. CR 10-20129-07-KHV, ___ F. Supp. 3d ___, 2021 WL 1721054, at *3 (D. Kan. Apr. 30, 2021) (quoting *United States v. Baydoun*, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020)). Although not binding on this court, the Sentencing Commission has recognized that grounds for release due to extraordinary and compelling reasons can include a (1) defendant's medical condition; (2) age; (3) family circumstances; and (4) a catchall category of an "extraordinary and compelling reason other than, or in combination with," the first three

3

categories. *Id*. (citing U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018)); *United States v. Carr*, 851 F. App'x. 848, 853-54 (10th Cir. 2021) (district court has discretion to consider definition of extraordinary and compelling reasons in Section 1B1.13 application notes).

With respect to the second requirement (whether a reduction is consistent with applicable policy statements), the Tenth Circuit has held that the current Sentencing Commission policy statement on extraordinary circumstances does not constrain a court's discretion to determine whether circumstances are extraordinary and compelling because that provision applies only to motions filed by the Director of the BOP, not to motions filed by a defendant. *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021).

Defendant bears the burden of establishing that compassionate release is warranted under the statute. *See, e.g., United States v. Dial*, No. 17-20068-JAR, 2020 WL 4933537 (D. Kan. Aug. 24, 2020); *United States v. Dixon*, No. 18-10027-02-JWB, 2020 WL 6483152, at \*2 (D. Kan. Nov. 4, 2020).

**III.    Analysis**

    **A.    Exhaustion**

In his motion, Defendant raises five grounds for compassionate release: age, length of sentence, rehabilitation, family circumstances, and the COVID-19 pandemic create an extraordinary and compelling reason for release. The government does not dispute that Defendant presented his request for release to the BOP with respect to the argument concerning COVID-19. However, the government asserts that Defendant has not exhausted his claims regarding the remaining four grounds and, therefore, those grounds should be denied. Viewing the request submitted by Defendant, it is clear that he only raised the COVID-19 pandemic as a basis for

4

compassionate release. (Doc. 302-1.) Accordingly, the court finds that Defendant has not fully exhausted his request for relief to the extent that it is based on his age, length of sentence, rehabilitation, and family circumstances and this court lacks jurisdiction to consider his arguments.

### B. Sentencing Factors

Regardless of whether Defendant has shown extraordinary circumstances supporting a reduction, the reduction would not be warranted after consideration of the sentencing factors. Prior to granting a motion for compassionate release, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *McGee,* 992 F.3d at 1042. Some of the sentencing factors include the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense and afford adequate deterrence; the guideline sentencing range; and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

Defendant was sentenced to life imprisonment based on his willing participation in crimes that resulted in the death of Mrs. Barbara Sun. The nature of the offenses is shown by the following summary, which is derived from the presentence investigation report. *See also United States v. Piyarath Kayarath*, No. 94-10128-02-JWB, 2021 WL 2634438 (D. Kan. June 25, 2021). Mrs. Sun was an immigrant to this country who dreamed with her husband of owning a restaurant. They were able to purchase a building that formerly housed a restaurant in Wichita and opened the Mandarin Chinese Restaurant and Lounge. The equipment that came with the building purchase included a combination safe, although the Suns never used it because they did not know the combination and had nothing of value to keep in it. The Suns operated the restaurant for six years; for part of that time they lived on the second floor above the restaurant. Mrs. Sun, who was 35 years old, worked as the hostess, greeting customers and seating them, while Mr. Sun was the

primary cook for the restaurant. The Suns had two daughters, ages 8 and 5, both of whom were born in Wichita. The Suns' daughters often stayed at the restaurant following school and would help with chores or play on the second floor.

Defendant was one of five young men who planned the robbery of the restaurant. Several of the men were members of a street gang. They were unemployed and shared money that they obtained through robbery, burglary, and theft, often using the money to buy drugs. One of the men suggested robbing the Mandarin Restaurant because he believed the Suns maintained gold and jewelry on the premises. The restaurant foyer in fact had a glass display case in it containing jewelry, but it was only costume jewelry and was of nominal value. The robbery plan called for the occupants of the Mandarin to be gathered together and tied up, with one of the robbers guarding them, while the others would take one of the proprietors to another area and demand that they turn over money and jewelry. The men decided to take two handguns with them, a 9mm Beretta and a .32 caliber revolver.

Late in the evening of November 8, 1994, the men drove to the restaurant in two cars, one of which was stolen earlier in the day. They saw cars in the parking lot and decided to wait until the customers were gone. They drove to a nearby mall and burglarized a car, getting into a scuffle with the car owner when he emerged from the mall. The men then drove back to the restaurant and four of them (including Defendant) entered, one wearing a mask. Mrs. Sun was seated in the restaurant lounge helping her daughters with their homework. Mr. Sun was cleaning the kitchen. Two men, including Defendant, grabbed Mr. Sun and demanded that he open the cash register. The men then ordered Mr. Sun to get on the floor near the bar and bound his hands. They also tied up a waiter and Mrs. Sun. The Suns' two daughters were not tied up but were ordered to remain with their father. Two of the men grabbed Mrs. Sun by her hair and forced her upstairs, ramming

6

her head on the bar and wall as she struggled. Upstairs, the men demanded Mrs. Sun open the safe. She tried to explain that she did not know the combination. The two men upstairs ransacked the room looking for valuables.

When the two men upstairs found no valuables, they began to beat Mrs. Sun with their fists and blunt objects and began kicking her. She sustained severe bruising to her head, face, neck, arms, torso, and legs. One of the men, Bountaem Chanthadara, took out the 9mm handgun and proceeded to shoot Mrs. Sun at close range five times.[3] The details of the wounds, from which Mrs. Sun soon died, are too horrible to set forth here. After the murder, Defendant and Chanthadara went back downstairs and exited the restaurant with their cohorts. However, Chanthadara tipped over the glass jewelry case in the foyer on his way out, leaving a palm print on the glass that investigators would later find. The men drove away. They obtained a total of about $100 in the robbery.

Mr. Sun and the waiter managed to free themselves from their restraints. Mr. Sun sent his eight-year old daughter to seek help from a nearby restaurant, while he went to search upstairs for his wife. He found her lying on the floor covered in blood. Mr. Sun's daughter returned with an employee from a neighboring restaurant. The girl followed the employee upstairs and saw her mother lying, dead or dying, amongst the debris on the floor.

The need for the sentence imposed to reflect the seriousness of the offense does not weigh in favor of a sentence reduction. The offenses of which Defendant was convicted are obviously extremely serious in nature. They resulted in the brutal and senseless death of an innocent young mother who, insofar as the record shows, only tried to work hard and take care of her family.

---

[3] Prosecutors sought the death penalty against Chanthadara and a district judge sentenced him to death, but the sentence was vacated on appeal. *United States v. Chanthadara,* 230 F.3d 1237 (10th Cir. 2000). On remand, Chanthadara was sentenced to life without the possibility of release. (Doc. 650.) Chanthadara died in prison in late 2019. (*See* Doc. 706.)

Defendant did not shoot Mrs. Sun, but he was a willful participant in the robbery and firearm offenses, and as such was legally responsible for the murder committed by his compatriot in the course of the robbery.

Defendant was himself an immigrant to the United States, having been brought here as a small child. Defendant was 20 years old at the time of the offenses. Yet, Defendant's involvement in this case was not his first foray into violent offenses. About a year and a half before the Mandarin Restaurant robbery, Defendant was convicted of battery. Notably, Defendant committed the instant offense while under his criminal justice sentence for battery.

Reducing the Defendant's sentence would not reflect the seriousness of his criminal conduct, nor would it furnish adequate deterrence to criminal conduct or provide just punishment. Defendant received a severe sentence for his offenses, but it was a sentence authorized by law and commensurate with the harm caused by the offenses. The court finds that the imposed sentence remains sufficient, but not greater than necessary, to meet the sentencing factors in § 3553(a) and punish the offense. Accordingly, Defendant's motion to reduce his sentence is denied.

## IV.  Conclusion

Defendant's motion for sentence reduction under § 3582 is DENIED. (Doc. 300.)

IT IS SO ORDERED this 16th day of September 2021.

                                            __s/ John W. Broomes__
                                            JOHN W. BROOMES
                                            UNITED STATES DISTRICT JUDGE